## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Baltimore/Washington Construction and<br>Public Employee Laborer's District Council,<br>   Petitioner | *<br><br>* | |
| v. | * | CIVIL NO. JKB-16-3722 |
| Whiting-Turner Contracting Co., | * | |
|    Respondent | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

Petitioner filed a petition in this Court to compel arbitration of its claim against Respondent pursuant to the Federal Arbitration Act and the Labor-Management Relations Act. (Petition, ECF No. 1.)  Now pending before the Court are Respondent's motion to dismiss the petition (ECF No. 4) and Petitioner's motion to compel arbitration (ECF No. 5).  Both motions are fully briefed.  (ECF Nos. 4-1, 5-1, 7, 8).  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016.)  For the reasons stated below, Respondent's motion will be denied in part and denied in part as moot, and Petitioner's motion will be granted in part and denied in part as moot.

## I.   *STANDARD TO COMPEL ARBITRATION UNDER THE LMRA*

The Labor-Management Relations Act provides a labor union with federal standing to "sue or be sued on behalf of the employees whom it represents."  29 U.S.C. § 185(b).  A union may thus petition the court to enforce a valid labor contract's arbitration clause, and federal courts have the authority to compel arbitration under such circumstances.  *Kop-Flex Emerson Power Transmission Corp. v. Int'l Ass'n of Machinists Local Lodge No. 1784*, 840 F. Supp. 2d 885, 890 (D. Md. 2012).  In ruling on a motion to compel arbitration, a court must limit its inquiry to determining the question of arbitrability, that is, "the gateway dispute about

whether the parties are bound by a given arbitration clause."  *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

## II.   FACTUAL BACKGROUND

The instant dispute arises within the context of Respondent's oversight of construction of the MGM Resort Casino at National Harbor in Prince George's County, Maryland ("the Project"). (Petition.)  To promote an efficient and cooperative relationship between management and labor working on the Project, Respondent entered into a Project Labor Agreement (the "PLA") with various trade unions, including Petitioner, on September 15, 2014.  (PLA § 1.4, ECF No. 1-1.)

The PLA grants preference to contractors or subcontractors who themselves sign the PLA and have signed collective bargaining agreements with appropriate unions.  (*See* PLA § 12.5.) However, it contemplates the participation of other contractors as well.  (*See id.*)  According to the PLA, any contractor or subcontractor working on the Project—whether or not it is a party to the PLA—must pay its employees according to the region's prevailing wage, at a minimum. (*Id.*)  The PLA also sets out a three-step process for resolving any dispute that should arise between labor and management within the course of the Project.  (PLA § 6.3.)  This procedure is the exclusive means of resolving conflicts between a laborer or union and a contractor or the Respondent when both parties involved are signatories to the PLA.  (*Id.*)  It requires that, if a union has a grievance against an employer, the two must first attempt to resolve the issue through a conference among their representatives.  (*Id.* at § 6.3.3(b).)[1]  If the parties are unable to agree on a solution, then the appropriate international union must send a representative to attempt to resolve the issue with the employer.  (*Id.* at § 6.3.2.)  Finally, if no resolution is

---

[1] The numbering of the PLA's subsections within § 6.3 contains an apparently erroneous duplication.  The subsection containing "Step 1," which is numbered § 6.3.3, was presumably intended to be numbered § 6.3.1, in which case the subsection containing "Step 3" is correctly numbered § 6.3.3.

availing after the previous two steps, then either party may submit the dispute to arbitration.  (*Id.* at § 6.3.3(a).)

DGS Construction, d/b/a Schuster Concrete Construction ("Schuster"), which does not have a collective bargaining agreement with its employees and is not a signatory to the PLA, contracted with Respondent to perform certain services on the Project.  (Petition ¶ 11.)   On March 17, 2016, Petitioner met with Respondent in an attempt to address Petitioner's objection that Schuster allegedly failed to pay its employees in conformity with § 12.5 of the PLA. (Allison Letter dated March 25, ECF No. 1-2.)  In correspondence on April 20 and May 2, 2016, Respondent asserted its position that Petitioner had not alleged Respondent to have violated the PLA and that Schuster (a non-signatory to the PLA) was not bound by the PLA's prevailing wage requirement.  (Taylor Letters dated April 20 and May 2, ECF Nos. 4-2, 4-3.)  Interpreting Respondent's communications as denials under Steps One and Two of the PLA's grievance procedure, Petitioner proceeded at some point between May 2 and May 9, 2016, to submit the dispute for arbitration.[2]  (Martire Letter dated March 25, ECF No. 4-4.)  In correspondence on May 10, and 20, 2016, Respondent refused to participate in arbitration, reasserting its position that Petitioner had failed to allege Respondent to have committed any breach of the PLA and that accordingly, there was no basis for arbitration.   (Taylor Letters dated May 10 and 20, ECF Nos. 4-5, 1-3).  On May 23, 2016, Petitioner averred (1) that the PLA obliged Respondent to ensure that all non-union subcontractors it retained paid their employees in conformity with § 12.5 of the PLA; (2) that by failing to do so in the case of Schuster, Respondent was in breach of the PLA; and (3) that Petitioner's objection to this breach was an arbitrable grievance. (Petruska Letter dated May 23, ECF No. 1-4.)  On June 4, 2016, Respondent again denied that

---

[2] The letter evidencing this determination appears to be incorrectly dated March 25, 2016, as the letter contains a reference to other correspondence dated May 2, 2016.  (*See* ECF Nos. 4-4, 4-5.)

Petitioner's claim constituted an arbitrable grievance under the PLA.  (Taylor Letter dated June 4, ECF No. 1-5.)  The instant action followed on November 16, 2016.  (Petition.)

## III.   ANALYSIS

Petitioner filed its action pursuant to two federal statutes:  the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2015), and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2015).  (Petition ¶¶ 18–25.)  As discussed below, the Court finds (A) the action is timely under the LMRA, (B) the substance of Petitioner's grievance is contemplated under the arbitration provision contained in the PLA's grievance procedure, and (C) questions of Petitioner's compliance with the grievance procedure are appropriate for resolution in arbitration.  Accordingly, Petitioner's motion to compel arbitration will be granted and Respondent's motion to dismiss will be denied under the LMRA.  Both parties' motions with respect to the FAA will therefore be denied as moot.

### A.     Timeliness under the LMRA

Congress has adopted a broad federal policy "favoring arbitration of labor disputes." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, Unincorporated Ass'n*, 815 F.3d 154, 162 (4th Cir. 2016).  It passed the LMRA in 1947 in order to define the rights of employees and employers (with respect to each other and to organized labor unions) and to ensure protection of such rights and those of the public in connection with labor disputes affecting commerce.  29 U.S.C. § 141 (2015).

The Fourth Circuit has not definitively stated the applicable statute of limitations in actions to compel labor arbitration.  *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Int'l Union Local No. 850L v. Cont'l Tire N. Am., Inc.*, 568 F.3d 158, 162 (4th Cir. 2009) (declining to address the issue).  Respondent appeals to the

federal policy in favor of speedy resolution of labor disputes as a basis for applying the National

Labor Relations Act's ("NLRA's") six-month statute of limitations (measured from the date on

which a party first refuses to participate in arbitration) in the instant case[3] and argues this statute

of limitations has been applied by several courts in analogous situations to the instant case.[4]

(Resp't's Reply in Supp. 10–11, ECF No. 7.)  Petitioner, by contrast, argues that the cases relied

on by Respondent do not represent the current state of the law[5] and that it is more appropriate to

apply the general three-year statute of limitations governing civil actions in Maryland.[6]  (Pet'r's

Reply in Supp. 5–7, ECF No. 8.)  However, in the instant matter, the Court need not determine

the correct statute of limitations because it finds Petitioner to have complied with even the more

stringent standard promoted by Respondent.

Petitioner first complained to Respondent about Schuster's noncompliance with the PLA

on March 17, 2016.  (Allison Letter dated March 25.)  As early as April 20, 2016, Respondent

denied Petitioner's complaint was subject to the grievance procedure (including arbitration).

(Taylor Letter dated April 20.)  Respondent would have the Court conclude that its April 20

correspondence represents a refusal to arbitrate the instant dispute.  (Resp't's Mem. in Supp. 6-7,

ECF No. 4-1.)  According to that position, the latest date Petitioner could have filed a timely

---

[3] *See, e.g., Zemonick v. Consolidation Coal Co.*, 762 F.2d 381, 387 (4th Cir. 1985) (indicating that the quick resolution of labor disputes is "one of the underlying policies of the United States").

[4] For the proposition that the six-month statute of limitations applies to actions to compel arbitration of collective bargaining agreements, Respondent relies on cases decided by several district courts in the Fourth Circuit as well as decisions of a number of circuit courts.  *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Int'l Union Local No. 850L v. Cont'l Tire N. Am., Inc.*, 562 F. Supp. 2d 677, 683 (W.D.N.C. 2008), *aff'd on other grounds*, 568 F.3d 158 (4th Cir. 2009); *Aluminum, Brick, & Glassworkers Int'l Union Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053, 1055 (5th Cir. 1990).

[5] Petitioner relies on *Reed v. United Transp. Union*, in which the Supreme Court applied to labor cases the general principle that when a federal statute does not specify a limitations period, courts should generally turn to the most closely analogous state law to supply one and should only look to another federal statute when it provides a closer analog and is more appropriate to the circumstances at hand.  488 U.S. 319, 323 (1989); *see also United Paperworkers Int'l Union Local 395 v. ITT Rayonier Inc.*, 931 F.2d 832, 836–38 (11th Cir. 1991) (applying *Reed* to conclude that a state statute of limitations should govern a motion to compel arbitration in the labor context).

[6] Petitioner infers from *Int'l Longshoreman's Ass'n v. Cataneo, Inc.*, that Fourth Circuit precedent would favor application of a state-law limitations period to a motion to compel labor arbitration.  990 F. 2d 794, 799–800 (4th Cir. 1993) (applying a state limitations period in a motion to vacate an arbitration award).

action under the NLRA's limitations period would have been October 20, 2016, thus rendering untimely the instant action, filed on November 16, 2016.[7]  Opposite that position, Petitioner argues its complaint was not fully articulated until May 23, 2016, when it averred that Respondent was in breach of contract because it did not enforce Schuster's compliance with § 12.5 of the PLA.  (Petruska Letter dated May 23.)  Respondent's next refusal to arbitrate came on June 4, 2016 (Taylor Letter dated June 4), and based on that date, the six-month statute of limitations would not expire until December 4, 2016, making the instant action timely.

These facts do not lend themselves to a clear determination as to when Petitioner articulated its current claim and when Respondent refused to arbitrate it.  In favor of Respondent's position is the notion that the underlying conduct complained of by Petitioner on March 17 (*i.e.*, that Schuster did not pay its employees according to the prevailing wage requirement) is the same conduct that it seeks to remedy in arbitration.  In Petitioner's favor is the fact that even Respondent characterizes Petitioner's May 23 articulation of its complaint (including the allegation that Respondent had a duty to ensure Schuster's compliance) as a new and distinct claim from those that came before.  (Resp't's Mem. in Supp. 4 n.5 ("[T]he allegation by the Union in its May 23, 2016 correspondence that [Respondent] breached the PLA is. . . an entirely new claim against [Respondent].").)  If either interpretation were clearly correct, the Court would honor it;[8] however, given the ambiguities involved, the Court will resolve the matter in Petitioner's favor.  In reaching this conclusion, the Court relies on the overarching

---

[7] Limitations periods calculated from Respondent's subsequent refusals to arbitrate on May 2 and 10, 2016, would likewise render the instant Petition untimely, with periods expiring November 2 and 10, 2016, respectively. However, those refusals, responding to the same argument as Respondent's letter of April 20, require no separate analysis.

[8] If the Court adopted Respondent's interpretation, it would then be required to decide whether the six-month statute of limitations applies.  If pressed, the Court would adopt the view of the Eleventh Circuit in *ITT Rayonier Inc.*, and apply the state law limitations period.  *See* 931 F.2d at 836–38.  Under Maryland law, the limitations period would be three years, and the Petition would be considered timely.  *See* Md. Code Cts. & Jud. Proc. § 5-101 (Lexis 2013).

federal policy favoring arbitration of labor disputes, *see Peabody Holding Co.*, 815 F.3d at 162, and on the fact that the parties have agreed to resolve at least some of their disputes through arbitration.  The motion to dismiss will be denied as to Respondent's argument that the Petition is untimely under the LMRA.

      **B.**    **Arbitrability of Petitioner's Grievance According to the PLA**

Respondent next claims that it never consented to arbitrate disputes of the type raised by Petitioner.  (Resp't's Mem. in Supp 8–10.)  The PLA is ambiguous as to whether the alleged conduct, if true, would constitute a breach of Respondent's duty and, therefore, whether Petitioner's allegation is covered by the arbitration provision.  However, the Court does not find Respondent to have overcome the applicable presumption of arbitrability.  Petitioner has also claimed a protectable interest in Respondent's compliance with the applicable section of the PLA.  For these reasons, the Court will deny Respondent's motion to dismiss the petition.

The Supreme Court has recognized that unless the parties have clearly agreed otherwise, it is a reviewing court's duty to interpret an arbitration agreement and to determine "whether the parties intended to arbitrate grievances concerning a particular matter."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (internal quotation marks omitted).  In conducting such an analysis under circumstances where the parties reached a valid and enforceable arbitration agreement, but in which that agreement is "ambiguous about whether it covers the dispute at hand," a reviewing court should apply a presumption of arbitrability and should order arbitration where the presumption is not rebutted.  *Id.*

The PLA contains a grievance process for settling disputes "arising out of and during the term of" the PLA, and Step Three of the process is an enforceable arbitration provision.  (PLA § 6.3.)  The parties disagree as to whether Petitioner's claim "arises out of" the PLA, and is thus subject to the arbitration agreement.  The grievance Petitioner seeks to arbitrate stems from its

interpretation of the PLA's prevailing wage clause contained in § 12.5, which states that for all

contractors working on the Project, even those that are otherwise exempt from the PLA

> payment of the prevailing wages and fringe benefit rates of the project as indicated on [sic] the Maryland Department of Labor, Licensing, and Regulation Informational Wage Rate for Prince George's County determined at the commencement of the Project, which [Respondent] has voluntarily adopted for the Project, shall be a minimum requirement.

(PLA § 12.5.)   The parties disagree over whether the PLA places an affirmative duty on

Respondent to enforce adherence to this prevailing wage clause against contractors who are not

unionized and not signatories to the PLA.   (Resp't's Mem. in Supp. 9–10; Pet'r's Mem. in

Opp'n 15–16, 18–19, ECF No. 5-1.)

Section 12.5 does not expressly state that it is Respondent's duty to ensure contractors'

compliance with the prevailing wage clause.   On the other hand, it does state that Respondent

adopted the prevailing wage requirement, and the agreement imposes that requirement on all

contractors working on the Project, even those who do not sign the PLA themselves.   If the

parties did not contemplate Respondent demanding non-signatory contractors to abide by the

wage requirement, then this provision would be effectively meaningless.   Thus, if Petitioner's

interpretation of the PLA is not correct, § 12.5 is at least ambiguous on Respondent's duties and

on whether Petitioner's complaint alleges conduct "arising under the PLA," subject to the

parties' arbitration agreement.   Accordingly, the Court will apply a presumption of arbitrability.

*See Granite Rock Co.*, 561 U.S. at 301.   Particularly in light of the common law principle to

prefer an interpretation that makes the contract effective rather than one rendering it illusory and

unenforceable, *see Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009),

Respondent fails to defeat the presumption of arbitrability.   The Court finds that the parties'

disagreement over the responsibilities Respondent assumed in § 12.5 of the PLA is subject to the

arbitration agreement in § 6.3 and therefore, that Respondent agreed to arbitrate claims like the one raised by Petitioner.[9]

The parties also disagree over whether Petitioner claims to have been injured by the alleged breach and thus has standing to bring its grievance.  (Resp't's Reply in Supp. 13–14; Pet'r's Reply Mem. 7–8.)  Union-standards clauses like the one in § 12.5 of the PLA are not an uncommon feature in labor agreements and have been found proper and enforceable by the courts and by the National Labor Relations Board.  *See Eisenmann Corp. v. Sheet Metal Workers Int'l Ass'n Local No. 24*, 323 F.3d 375, 383–84 (6th Cir. 2003) (citing sources).  Such clauses serve the legitimate purpose of protecting unionized laborers against lower-paid potential competitors.  *Id.* (quoting *Gen. Teamsters Local 386*, 198 NLRB 1038 (1972)).  Petitioner thus alleges it was injured when Respondent allegedly permitted Schuster to compensate its employees for less than the prevailing wage standards agreed upon in § 12.5 of the PLA. Consequently, the Court concludes Petitioner has standing to bring its grievance.

Respondent's motion to dismiss will be denied as to its argument that Petitioner failed to present a grievance that falls within the parties' arbitration agreement.

### C.  *Petitioner's Compliance with the PLA's Procedural Requirements*

Respondent points out that even if it is responsible for ensuring its subcontractors pay their employees in conformity with the prevailing wage, Petitioner did not articulate this allegation until after it had referred its grievance to arbitration.  (Resp't's Reply in Supp. 4.) Because arbitration is only Step Three in the PLA's grievance procedure, and because that procedure does not include a provision allowing a party to amend its grievance after the procedure has begun, Respondent denies ever having agreed to arbitrate a claim like that brought

---

[9] Because it decides the issue before it by applying a presumption of arbitrability, the Court does not identify Respondent's affirmative duties under § 12.5 of the PLA.  That determination, which goes to the merits of the dispute, is one to be resolved by the arbitrator.

by Petitioner.[10]   (*Id.*)   However, whether Petitioner sufficiently complied with the arbitration agreement's grievance procedure is a matter for the arbitrator and not the Court to decide.

As discussed above, the question of whether the parties have submitted a particular dispute to arbitration (*i.e.*, whether the parties are bound by a given arbitration agreement or whether a concededly binding agreement covers a particular controversy) is a matter for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). However, the Supreme Court has cautioned that not all "potentially dispositive gateway question[s]" are questions of arbitrability. *Id.* at 84. Rather, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.*

In assessing whether a procedural question in an arbitration agreement is suitable for judicial determination, *John Wiley & Sons, Inc. v. Livingston* is informative. 376 U.S. 543 (1964). Much like the instant case, *Livingston* involved an employer that challenged whether unionized employees had satisfied the first two steps of a grievance process before attempting to enforce the third step—referral to arbitration. Under those facts, the Supreme Court observed that such disputes are not easily divided into their 'substantive' and 'procedural' aspects because procedural questions are inextricably intertwined with the substantive facts of the parties' dispute. *Id.* at 556–57. The Court concluded that

> [d]oubt whether grievance procedures or some part of them apply to a particular
> dispute, whether such procedures have been followed or excused, or whether the
> unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be

---

[10] Whether Petitioner's ultimate grievance was the same or different from its original one affects the parties' respective interests oppositely on the issue of conformity with the PLA's grievance process as compared to the statute of limitations issue. On the statute of limitations issue, it is in Petitioner's interest for its final version of its grievance (specifically alleging a breach of duty by Respondent) to be distinct from its earlier version (alleging only that Schuster was not in conformity with the PLA) because the limitations period would effectively be reset with the new articulation. On the issue of conformity with the grievance procedures, interpreting Petitioner's allegations as a new grievance cuts in Respondent's favor because it indicates that Petitioner skipped over Steps One and Two of the procedure when it brought its "new" complaint.

answered without consideration of the merits of the dispute which is presented for arbitration.

*Id.* at 557.

The record includes sufficient evidence to understand the Union's allegations in Step One and Step Two of the grievance process (that Schuster had not paid its employees a prevailing wage) to have been distinguishable from those advanced in Step Three (adding that Respondent was responsible for ensuring Schuster's conformity). *See supra*, Part III. A. However, whether this difference represents an unexcused failure to follow the PLA's grievance process, and whether such a failure relieves Respondent from its duty to arbitrate, cannot be answered without consideration of the merits of the dispute. Accordingly, these are questions to be resolved in arbitration.

The Court will not dismiss based on Petitioner's potential noncompliance with the PLA's grievance process. Respondent's motion to dismiss under the LMRA will, therefore, be denied and Petitioner's motion to compel arbitration under the LMRA will be granted.

> ### D.  *Petitioner's Motion to Compel Arbitration under the FAA*

The Court interprets the Petition as arguing in the alternative for relief under the LMRA or the FAA. (*See* Petition ¶¶ 18–25.) Because the Court will grant Petitioner's motion under the LMRA, it will deny as moot Petitioner's motion to compel arbitration under the FAA and Respondent's motion to dismiss on that basis.

## IV.  CONCLUSION

For the foregoing reasons, with respect to Petitioner's claim under the LMRA, Respondent's motion to dismiss the Petition will be denied and Petitioner's motion to compel arbitration will be granted. With respect to Petitioner's claim under the FAA, both parties' motions will be denied as moot. A separate order will issue.

DATED this 23rd day of March, 2017.

                                               BY THE COURT:

                                             _____/s/_____

                                             James K. Bredar
                                             United States District Judge